# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRISTOPHER L. LUKASZEWSKI,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ELISHA WILLIAMS and JOHN AND JANE DOES,<br><br>　　　　　　　Defendants. | Case No. 22-CV-515-JPS<br><br>**ORDER** |

　　　　Plaintiff Christopher L. Lukaszewski ("Plaintiff"), who is incarcerated at Green Bay Correctional Institution, proceeds in this matter pro se. On December 19, 2022, the Court screened Plaintiff's complaint and allowed Plaintiff to proceed on the following four claims: (1) Eighth Amendment excessive force against Defendant Elisha Williams ("Defendant" or "Williams") for the improper use of restraints to cause Plaintiff harm; (2) Excessive force against John/Jane Doe for intentionally braking the transport van to cause Plaintiff harm; (3) Eighth Amendment failure to intervene against John/Jane Doe for the failure to intervene regarding Plaintiff's restraints; and (4) Eighth Amendment conditions of confinement claim against Williams and John/Jane Doe for the failure to provide access to a bathroom. ECF No. 9 at 7–8.

　　　　On April 4, 2023, the Court issued a scheduling order with discovery to be completed by October 6, 2023, and summary judgment motions due on or before November 13, 2023. ECF No. 22. The scheduling order instructed Plaintiff that he had ninety days from the date of the order to identify the Doe defendants and warned him that the failure to do so would result in their dismissal without further notice. *Id.* at 2. That deadline has

long passed, and Plaintiff has not identified the Does or sought an extension to do so. As such, the Court is obliged to dismiss the Does and the claims against them without prejudice.

On September 28, 2023, Defendant filed a motion for summary judgment. ECF No. 26. Plaintiff did not file any response. On June 18, 2024, the Court denied Plaintiff's motion to appoint counsel and provided Plaintiff a final opportunity to respond to the pending motion for summary judgment. ECF No. 36. The Court warned Plaintiff that the failure to file oppositional materials would result in the Court deciding the motion without his input. *Id.* at 6. On July 26, 2024, the Court granted another extension and warned Plaintiff that no further extensions would be granted. ECF No. 39 at 2. On July 29, 2024, Plaintiff filed a letter in response. ECF No. 40. On July 31, 2024, Defendant filed a reply letter. ECF No. 41. On August 5, 2024, Plaintiff filed yet another motion for an extension of time in order to obtain counsel. ECF No. 42.

Given the prior warnings, the Court is obliged to deny the motion for an extension. Here, Plaintiff's initial deadline has long passed, and the Court provided Plaintiff multiple opportunities to respond. No counsel has appeared for Plaintiff and any new counsel at this juncture would delay the case even further. As such, the Court denies Plaintiff's motion for an extension and finds that Defendant's motion for summary judgment is ready for disposition. As discussed in detail below, the Court grants Defendant's motion for summary judgment in full and will accordingly dismiss this case with prejudice.

1.      **LEGAL STANDARD — SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

Page 2 of 17
Case 2:22-cv-00515-JPS    Filed 08/28/24    Page 2 of 17    Document 44

law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

### 2. FACTUAL BACKGROUND

In compliance with the Court's scheduling order, Defendant submitted a statement of joint proposed material facts. ECF No. 28. As such, the following facts are taken directly from the parties' joint statement of material facts with only minor grammatical editing. Defendant also included a list of disputed facts, ECF No. 29, which the Court will address separately below.

On December 7, 2021, at approximately 6:00 a.m., Defendant and Deputy Alyssa Knabenbauer ("Knabenbauer") of the Oneida County Sheriff's Office conducted an adult transport of six individuals from the Oneida County Jail in Rhinelander, Wisconsin. Defendant and Knabenbauer were transporting one individual to the Winnebago Mental Health Institute in Oshkosh, Wisconsin, and the other five individuals, including Plaintiff, to Dodge Correctional Institution in Waupun, Wisconsin. Defendant and Knabenbauer prepared the six individuals for transportation by placing each individual in handcuffs in front of their person through a transport belt that was locked in the back and leg

shackles. Defendant placed two individuals in handcuffs, including Plaintiff. Plaintiff was placed in handcuffs and restraints at around 6:12 a.m.

While Defendant was handcuffing Plaintiff, she asked him how he was doing and he responded, "good." None of the individuals, including Plaintiff voiced any concerns regarding their restraints. Defendant placed Plaintiff in handcuffs at the front of his person, checked the handcuffs for fit, and safely locked the handcuffs. Defendant then requested that Plaintiff turn toward the bullpen of the Oneida County Jail for her to secure the transport belt and lock it pursuant to standard protocol for transportation.

After the six individuals were secured, Defendant and Knabenbauer guided them to the Sheriff's Office transport van and loaded them onto the van. The transport van has three separate and individual compartments: two longer compartments in the back of the vehicle that seats inmates side by side and a third separate compartment in front of the two rear compartments. The transport van is equipped with live streaming cameras so that deputies can monitor the inmates in the transport compartments during transport.[1] Plaintiff and one other inmate were loaded into one of the two rear compartments.

The transport van left the Oneida County Jail at 6:15 a.m. and arrived at the Winnebago Mental Health Institute at approximately 8:58 a.m. Defendant drove the transport van and Knabenbauer rode in the front passenger seat and they both observed the live video stream. There were no issues with any of the inmates on the way to the Winnebago Mental Health Institute.

When the transport van arrived at the Winnebago Mental Health Institute, Knabenbauer escorted one inmate from the van to the facility and initiated the intake procedures and Defendant remained inside the van.

---

[1]These cameras do not have recording capability.

Plaintiff was seated in the secure area of the transport van closest to the interior of the transport vehicle and camera. While Knabenbauer was at the facility, Plaintiff pounded on the walls of the transport vehicle and yelled to Defendant that he had to urinate. Defendant responded to Plaintiff that it was an approximately forty-five-minute drive to Dodge Correctional Institution from their current location, that the transport van was currently parked, and that he would be able to urinate upon arrival at Dodge Correctional Institution. Defendant and Knabenbauer did not use the restroom during this transport or allow any other inmates to use the restroom while stopped at the Winnebago Mental Health Institute.

After being told that he could not use the bathroom, Plaintiff became upset and said to Defendant that she incorrectly put his handcuffs on by placing them on the incorrect wrists and that he needed the handcuffs removed. At this point, the other inmate in Plaintiff's compartment was facing the back exit door of the secured portion of the transport vehicle and appeared to be doing something with the door, but Defendant could not identify what he was doing.

After Knabenbauer returned to the van, Plaintiff stood up and put his handcuffs in view of the camera and announced again that his handcuffs had been put on incorrectly. Defendant instructed Plaintiff to sit down and advised that he would be removed from his compartment within the transport van upon arrival at Dodge Correctional Institution. In response, Plaintiff began "flipping off" the camera with his middle finger and shouted profanities toward Defendant, including saying, "Fuck you." Plaintiff continued shouting profanities towards Defendant, and he appeared upset that she would not let him outside of the transport van.

Plaintiff then moved to the back of the compartment, pushing past the other inmate, where he had his back to the camera and appeared to be

Page 5 of 17
Case 2:22-cv-00515-JPS    Filed 08/28/24    Page 5 of 17    Document 44

doing something with the back door of the transport vehicle. Based on Plaintiff's behavior, including his movements outside of the view of the camera and aggressive striking of the walls within the transport van, Defendant and Knabenbauer determined that it would not be safe to open the door at that time and Defendant advised Plaintiff that she would not be opening the door of the van for him to exit. Both deputies determined that it would have been a security risk to remove Plaintiff from the vehicle in his agitated state.

  Defendant observed in her camera feed that when Plaintiff was facing the camera, he was able to move his hands and wrists. Because Plaintiff could move his hands and wrists, Defendant had no concerns that Plaintiff's circulation was being cut off or that there were other medical concerns associated with placement of the handcuffs. Defendant specifically recalled being inside the Oneida County Jail while placing handcuffs on Plaintiff and knew that the handcuff locks had been placed on the top side of both of his wrists, the required posture for properly applying cuffs. She also knew that there was no variation in the chain which would have indicated the handcuffs were tight. Defendant also placed a finger inside Plaintiff's handcuffs upon tightening them and asked Plaintiff if the handcuffs were too tight to which he replied, "no."

  At approximately 9:24 a.m., Defendant and Knabenbauer left the Winnebago Mental Health Institute in route for Dodge Correctional Institution with the remaining five inmates. Immediately after Defendant began driving in the direction of Dodge Correctional Institution, Plaintiff stood up and began to scream expletives at Defendant, including "You fucking cunt" and "Dyke bitch." Plaintiff repeated that his handcuffs were on "fucked up" and needed them off and continued to violently pound on the walls of the transport vehicle while standing.

Plaintiff was standing while the van was in motion and about to enter the highway going towards Waupun and Dodge Correctional Institution. Defendant loudly ordered Plaintiff to sit down but Plaintiff responded: "Fuck you" and "I can do this all day Sarge." Plaintiff's choice to stand in the van created a major concern for Defendant because the roads had been slippery due to wintery conditions throughout the transport and Plaintiff or the other inmates could be significantly injured if Plaintiff remained standing. Plaintiff's actions were also distracting Defendant and Knabenbauer, and this increased the potential for a motor vehicle accident. Plaintiff continued to call Defendant a "cunt bitch" and faced the back of the compartment, refused to sit, and when Defendant again loudly ordered Plaintiff to sit, he responded by pounding on the transport van and moving his handcuffs around his wrists while remaining standing.

Due to the security risks and safety concerns for Plaintiff and other inmates associated with Plaintiff standing in the vehicle, Defendant decided to conduct a controlled brake maneuver. During a controlled brake maneuver, the vehicle brakes are quickly and firmly engaged for the purpose of causing a standing inmate to slide onto the padded seat of the transport vehicle. After the controlled brake maneuver, Plaintiff immediately stood back up and shouted profanities but a short time later when the transport vehicle entered the highway and returned to highway speeds, Plaintiff sat down.

Once Plaintiff returned to sitting, he stopped physically moving about the van but remained verbally belligerent during the transport, including screaming through the duration of the transport. Plaintiff shouted profanities and banged on the walls of the vehicle, including calling Defendant a "Dyke cunt" and making sexually suggestive comments about Defendant and other insulting remarks. Defendant and

Knabenbauer observed Plaintiff turning his back towards the transport away from the camera. Defendant and Knabenbauer also observed Plaintiff continually yelling. Plaintiff's actions of twisting his handcuffs on his wrists was photographed by Knabenbauer.

The transport van arrived at Dodge Correctional Institution at approximately 10:15 a.m. After they arrived at Dodge Correctional Institution and while waiting outside of the facility, Plaintiff continued to shout profanities and grind his wrists into the handcuffs. After arrival at Dodge Correctional Institution, the transport vehicle was searched by correctional officers. Defendant and Knabenbauer proceeded into the intake portion of the facility. Plaintiff was removed from the transport van at approximately 10:50 a.m. and escorted to intake.

When he walked past Defendant, Plaintiff raised his hands towards her face. Upon entering the intake facility at Dodge Correctional Institution, Plaintiff advised the on-duty correctional supervisor that his handcuffs were too tight and demanded to be seen by medical staff. The corrections sergeant walked over to Plaintiff and advised him that there was obvious circulation in his hands and wrists and the handcuffs did not appear too tight. It appeared that Plaintiff's handcuffs were tangled as a result of his own actions during the transport. Plaintiff did not exhibit any signs of distress while going through intake at Dodge Correctional Institution.

Defendant and Deputy Knabenbauer observed that there were red marks and slight swelling on Plaintiff's wrist area which was consistent with his actions inside the van of continuously turning the handcuffs around and rubbing them during the duration of the trip from Oshkosh to Waupun. Plaintiff did not state that he sustained any other injuries. He stated that he wished to see the prison nurse for the problems he caused to his wrists. Defendant believed that during the transport, Plaintiff was

Page 8 of 17
Case 2:22-cv-00515-JPS   Filed 08/28/24   Page 8 of 17   Document 44

attempting to rotate the handcuff chain and pull on it in a possible attempt break the handcuff chain. None of the other inmates being transported made any complaints or had handcuffs that were twisted in the manner that Plaintiff's handcuffs were, and Plaintiff was the only inmate who stood up during the transport. There were no other medical or security concerns made by any of the other inmates during the transport.

**3.     ANALYSIS**

Defendant's motion for summary judgment seeks dismissal of all claims in the case. First, Defendant argues she is entitled to summary judgment on the excessive force claim because the undisputed facts show she did not use excessive force in placing the handcuffs on Plaintiff or by braking the vehicle during Plaintiff's transport. ECF No. 27 at 2–7. Second, Defendant argues that restricting Plaintiff's bathroom access during the transport did not violate the Eighth Amendment. *Id.* at 7–9.

Prior to its analysis, however, the Court must address the elephant in the room at this stage in the case. Plaintiff has presented no evidence in support of his claims, and such a failure is often determinative at the summary judgment stage. *See Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024) *(*"Summary judgment is the 'put up or shut up' time in litigation."). After multiple opportunities to do so, Plaintiff has submitted only a letter in response to Defendant's summary judgment materials. *See* ECF No. 40. This letter, which is not sworn and verified, is not evidence for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(c)(1). Further, Plaintiff's complaint is also not sworn and verified, so the Court may not consider it as evidence either. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("[T]there is a distinction between an ordinary complaint that serves as a pleading, and a verified complaint.); *see also Shaul v. Hibbard*, No. 119-CV-3962-JMS-TAB, 2022 WL 1045013, at *1 (S.D. Ind. Apr. 7, 2022) ("The

Page 9 of 17
Case 2:22-cv-00515-JPS   Filed 08/28/24   Page 9 of 17   Document 44

unverified amended complaint is not evidence and thus, statements made in the amended complaint are not considered in resolving the pending motion for summary judgment.") (citing *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)).

As such, the Court is left to decide summary judgment based on the undisputed facts that have been properly submitted into evidence. The Court takes seriously its obligation to liberally construe pro se filings and to construe all facts and reasonable inferences in a light most favorable to the nonmovant at the summary judgment stage. However, liberally construing filings is not the functional equivalent of allowing pro se parties to disregard the rules of civil procedure and this Court's summary judgment protocols. Even pro se litigants are obliged to follow procedural rules. *See McCurry v. Kenco Logs. Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (courts may "strictly enforce local summary-judgment rules" even against pro se litigants); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1020 (N.D. Ill. 2018) (disregarding portions of plaintiff's proffered facts on summary judgment for failure to comply with local rule). As such, and for the reasons explained below, the Court will grant Defendant's motion for summary judgment and will dismiss this case with prejudice.

### 3.1 Excessive Force

The parties agree that Defendant placed handcuffs on Plaintiff prior to his transport to another institution. The parties further agree that Defendant braked the vehicle at some point during the transport. As noted by the parties' statement of disputed facts, the parties disagree, however, on whether the handcuffs were put on too tightly and whether the braking maneuver constituted excessive force. ECF No. 29 at 1.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th

Page 10 of 17
Case 2:22-cv-00515-JPS    Filed 08/28/24    Page 10 of 17    Document 44

Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Summary judgment rarely is appropriate for excessive force cases because material factual disputes exist. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). However, even at summary judgment, courts need not "indulge stories clearly contradicted by [video] footage" that "firmly settles a factual issue." *Horton*, 883 F.3d at 944. Thus, "'[a] conclusive video allows a court to know what happened and decide the legal consequences,' but a video that is ambiguous or 'not wholly clear' can be relied on only for those facts that can be established 'with confidence' and 'beyond reasonable question.'" *Smith v. Finkley*, 10 F.4th 725, 730 (7th Cir. 2021) (quoting *Johnson v. Rogers*, 944 F.3d 966, 967, 969 (7th Cir. 2019)).

Here, as to Defendant's use of handcuffs, the Court does not find that her conduct constitutes excessive force under the Eighth Amendment. The undisputed facts show that Defendant placed handcuffs on Plaintiff in preparation for transport to another facility. While Defendant was handcuffing Plaintiff, she asked him how he was doing and he responded, "good." Defendant placed Plaintiff in handcuffs at the front of his person, checked the handcuffs for fit, and safely locked the handcuffs. The transport van left the Oneida County Jail at 6:15 a.m. and arrived at the Winnebago Mental Health Institute at approximately 8:58 a.m. After being told that he

could not use the bathroom, Plaintiff became upset and at that point said to Defendant that she incorrectly put his handcuffs on by placing them on the incorrect wrists and that he needed the handcuffs removed. Defendant and Knabenbauer determined that it would have been a security risk to remove Plaintiff from the vehicle in his agitated state at that time. Defendant observed in her camera feed that when Plaintiff was facing the camera, he was able to move his hands and wrists. Because Plaintiff could move his hands and wrists, Defendant had no concerns that Plaintiff's circulation was being cut of or that there were other medical concerns associated with placement of the handcuffs.

Despite the parties' generalized dispute about whether the handcuffs were initially put on too tightly, the video evidence supports Defendant's version of facts. Plaintiff appears to be calm in the video and in no distress while Defendant placed the handcuffs on him. Further, as indicated above, Plaintiff has submitted no evidence to contradict Defendant's version and no facts suggest, even if the handcuffs were in fact placed too tightly, that Defendant was aware of that fact and acted maliciously or sadistically to cause harm. As such, the Court finds that on this record no reasonable jury could find that Defendant used excessive force in regard to the handcuffs.

Similarly, the Court does not find that Defendant used excessive force in braking the vehicle during transport.[2] Plaintiff's disputes,

---

[2]The Court notes that the screening order allowed this claim to proceed against a Doe defendant as Plaintiff's allegations, as understood by the Court, did not suggest that Defendant performed this action. *See* ECF No. 9 at 4 ("Similarly, Plaintiff's allegation against the John/Jane Doe deputy for intentionally braking the transport vehicle to injure him is sufficient to constitute excessive force.") Plaintiff never identified Defendant as the Doe regarding this claim, and, accordingly, there technically is no claim proceeding against Defendant for this action. However, in light of Plaintiff's pro se status and the fact that Defendant herself identifies as the actor, the Court addresses the merits of the claim.

regardless of having no support in the record, still do not create a genuine issue of material fact. As provided in the parties' disputed facts, Plaintiff disputes that he slid onto the padded seat of the transport vehicle during the controlled break maneuver. Plaintiff also disputes that none of the other inmates moved from their position during the maneuver. Plaintiff does not, however, dispute his aggressive behavior prior to the brake maneuver or the fact that he was standing in the vehicle and refusing to obey orders to sit.

The undisputed facts show that Plaintiff's choice to stand in the transport vehicle created a major concern for Defendant because of the wintery conditions and slippery roads; Defendant was concerned that Plaintiff or other inmates could have been significantly injured if Plaintiff remained standing. In order to manage this situation, Defendant chose to perform a controlled brake maneuver. Defendant explains that during this maneuver, the vehicle brakes are quickly and firmly engaged for the purpose of causing a standing inmate to slide onto the padded seat of the transport vehicle. Nothing in the record indicates that Defendant acted maliciously or sadistically to cause harm when braking the vehicle. Given the safety risk of an inmate standing in these conditions, the record supports that the use of force here was in a good-faith effort to restore discipline and to protect other prisoners. As such, the Court finds that no reasonable jury could find that Defendant used excessive force in regard to the controlled brake maneuver. The Court will accordingly grant Defendant's motion for summary judgment as to the excessive force claim.

### 3.2 Conditions of Confinement

Plaintiff was allowed to proceed on an Eighth Amendment conditions of confinement claim against Defendant for allegedly denying him access to a bathroom for a period of over four hours. ECF No. 9 at 6. A

prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities,"; and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013).

"Adequate facilities to wash and use the toilet are among the 'minimal civilized measure of life's necessities.'" *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citation omitted). "But 'adequate' does not mean on-demand access. The Constitution does not require anytime-anywhere access to the bathroom." *Diaz v. Truit*, No. 23-CV-2845, 2023 WL 6784411, at *3 (N.D. Ill. Oct. 6, 2023). In *White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018), the Seventh Circuit found that "no decision . . . known to us suggests that . . . a once-every-two-hours limit on the use of a toilet violates society's minimum standards of decency." Courts have found that as much as a four-hour denial of access to a bathroom did not

violate the Eighth Amendment. *See Castro v. Atchison*, No. 313-CV-00303JPG-PMF, 2015 WL 7184816, at *5 (S.D. Ill. Sept. 14, 2015) ("[N]either the Seventh Circuit nor the Supreme Court have held that denial of toilet access for a four hour period, by itself, violates the Eighth Amendment.").

Here, the Court does not find that the conditions present in this case objectively rose to the level of depriving Plaintiff of the minimalized necessities of life, and therefore it fails the first prong of the test. The undisputed facts in the record show that Defendant became aware of Plaintiff's need to urinate at approximately 8:58 a.m.[3] Due to security concerns, the prison officials determined that the prisoners would not be let out at the first stop at the Winnebago Mental Health Institute. The transport van arrived at Dodge Correctional Institution at 10:15 a.m., and after the van was searched, Plaintiff was escorted off the van at approximately 10:50 a.m.[4] Given this timeline, Plaintiff was deprived of bathroom facilities for approximately two hours, and nothing in the record suggests that Plaintiff had special circumstances, medical or otherwise, requiring more frequent access to a bathroom. As shown above, courts have routinely found that this relatively short length of time does not violate the Eighth Amendment. *See id.* (finding no Eighth Amendment violation where Plaintiff "was denied a toilet for four hours and he sat in his own urine for the last three

---

[3]The Court notes that Plaintiff's complaint alleges that he notified Defendant while in booking at the Oneida County Jail and that Defendant replied, "It's too late I'm not redoing the cuffs." *See* ECF No. 1 at 3. Plaintiff's allegations suggested that the deprivation lasted for over four hours. However, as noted above, the complaint is not verified and therefore cannot be considered evidence at the summary judgment stage. *See Beal*, 847 F.3d at 901.

[4]The Court notes that the record is not clear as to exactly what time Plaintiff accessed a bathroom. For the purposes of this motion, and based on the record before it, the Court presumes it was at approximately 10:50 a.m. during intake procedures. Plaintiff has never alleged or presented facts to suggest the delay went past arrival at Dodge Correctional Institution intake.

hours of the trip"). The Court therefore finds that the conditions here did not objectively deprive Plaintiff of the minimalized necessities of life.

The Court wishes to emphasize that this finding does not "mean to minimize the discomfort, pain, or embarrassment that even slight limits on toilet access can cause." *White*, 710 F. App'x at 262. Certainly, the Court recognizes that these conditions likely caused Plaintiff discomfort and perhaps pain. However, given the inherent limitations of prison environments, prison officials may place reasonable limits on access to a bathroom. The restriction in this case was not "so degrading or dangerous that it meets the standard for an Eighth Amendment violation[.]" *Id.* As such, the Court will accordingly grant Defendant's motion for summary judgment as to the conditions of confinement claim.

### 4. CONCLUSION

For the reasons explained above, the Court finds that the undisputed facts show that Defendant did not use excessive force on Plaintiff in violation of the Eighth Amendment and did not violate the Eighth Amendment by limiting his access to the bathroom for approximately two hours. The Court will accordingly grant Defendant's motion for summary judgment as to all claims and will dismiss this case with prejudice.

Accordingly,

**IT IS ORDERED** that the Doe defendants be and the same are hereby **DISMISSED without prejudice** for Plaintiff's failure to prosecute;

**IT IS FURTHER ORDERED** that Plaintiff's motion for an extension of time, ECF No. 42, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Elisha Williams's motion for summary judgment, ECF No. 26, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of August 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.